**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THE ESTATE OF DANIEAL KELLY** | : | |
| **BY AND THROUGH ABRAHAM J. GAFNI,** | : | |
| **ADMINISTRATOR D.B.N.,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| **vs.** | : | **NO.  08-3700** |
| | : | |
| **MULTIETHNIC BEHAVIORAL HEALTH, INC.;** | : | |
| **MICKAL K. KAMUVAKA; JULIUS MURRAY;** | : | |
| **DANA M. POINDEXTER; LAURA SOMMERER;** | : | |
| **ANDREA KELLY; and DANIEL KELLY,** | : | |
| **Defendants.** | : | |

**DuBOIS, J.**                                                    **SEPTEMBER 9, 2009**

**MEMORANDUM**

**I.      INTRODUCTION**

This case concerns Danieal N. Kelly ("Danieal"), a minor with cerebral palsy under the supervision of the Philadelphia Department of Human Services, who died from neglect and starvation while in the physical custody of her mother. The circumstances surrounding Danieal's death have garnered significant media and public attention, resulting in a number of criminal prosecutions and reform measures. This lawsuit, by and through the Estate of Danieal N. Kelly ("Estate"), asserts civil claims under state law against those allegedly responsible for Danieal's death. The question to be resolved by the Court at this juncture is whether or not certain interested parties may intervene in the litigation to assert federal claims on behalf of the Estate. Secondary to that question, the Court will consider the merits of any such federal claims.

## II.     BACKGROUND

### A.     Facts[1]

Danieal was born on January 3, 1992 with cerebral palsy, a condition which limited her ability to walk and care for herself. Danieal's parents, Andrea Kelly and Daniel Kelly, exchanged custody of Danieal during her childhood, but she lived the last years of her life in Philadelphia with her mother and several of her eleven siblings. In August 2003, the Philadelphia Department of Human Services ("DHS") began receiving reports of neglect and abuse in the Kelly home, and in September 2005, Danieal and her siblings were placed in a DHS program known as Services to Children in their Own Home ("SCOH"). As part of the program, DHS outsourced the task of monitoring Danieal and her siblings to Multi-Ethnic Behavioral Health (MEBH), a company which received several million dollars in city contracts for performing such services. At no point did DHS remove Danieal from her parents' custody.

In the three years following August 2003, DHS received eleven (11) reports of neglect and/or abuse relating to the Kelly children. (Am. Compl. ¶ 56.) DHS assigned a social worker, Dana Poindexter, to investigate these reports. After the Kelly case was given to MEBH in or around September, 2005, DHS assigned Laura Sommerer, another social worker, to oversee the services provided by MEBH and to ensure that the Kelly children were safe. (Am. Compl. ¶ 58.) Aside from contracting with MEBH to monitor the Kelly family, no action was taken by DHS to ensure that Danieal received necessary care and medical attention. (Am. Compl. ¶ 59.)

---

[1] For reasons stated more fully below, the procedural posture of this case requires the Court to consider facts pled in the original Complaint, which are, in any event, consistent with the facts pled in the Amended Complaint. Accordingly, the facts in this section are taken from both Complaints and are only relevant for the Court's discussion in Part III.B concerning the merits of the federal claims that the Objectors wish to assert on behalf of the Estate.

Under the terms of its contract with DHS, MEBH agreed, *inter alia*, to monitor the Kelly children's safety and well being and to promptly report any unsafe conditions to DHS. (Am. Compl. ¶¶ 40-41.) As part of the monitoring function, MEBH agreed to have direct contact with the Kelly children at least twice per week, visit the Kelly home at least once per week, and have indirect contact with those people supporting the Kelly children, *e.g.*, teachers and doctors, at least twice per week. (Am. Compl. ¶¶ 42-44.) Monitoring duties were assigned to Julius Murray, a MEBH employee, and Alan Speed, a MEBH student intern.[2] Mickal Kamuvaka, a co-founder of MEBH, was responsible for supervising Murray's and Speed's work. MEBH failed to fulfill the terms of the DHS-MEBH agreement with regard to the supervision of the Kelly family. (Am. Compl. ¶¶ 70-73.)

Philadelphia police officers found Danieal dead in her home on August 4, 2006. Fourteen years old at her death, she weighed only forty-two pounds, her body had no subcutaneous fat, and there was no trace of food or liquid in her stomach. Her body was found with multiple bedsores, which were infected and, in one instance, reached the bone.

**B.      Procedural History**

On July 29, 2008, the Register of Wills of Philadelphia County issued Letters of Administration to Andrea Kelly and Daniel Kelly. On August 1, 2008, Brian Mildenberg, Esq., and Eric Zajac, Esq., ("Zajac"), counsel for Daniel Kelly and Andrea Kelly, filed the instant action on behalf of the Estate of Danieal Kelly in the Philadelphia Court of Common Pleas. The original Complaint asserted state law wrongful death and survival act claims against the following defendants: the City of Philadelphia, the Philadelphia Department of Human Services, the Commonwealth of Pennsylvania, the Pennsylvania Department of Public Welfare ("DPW"), Dana Poindexter, Laura Sommerer, Multi-Ethic Behavioral Health, Mickal Kamuvaka, and Julius Murray. The Complaint also alleged federal causes of action

---

[2] Unlike the other individuals named in this fact section, Alan Speed is not a defendant in the instant action.

against the first six defendants for violations of Danieal's constitutional rights. On August 5, 2008, defendants removed the case to this Court.

The City of Philadelphia and DHS ("City Defendants") filed a motion to dismiss on August 8, 2008. The Commonwealth of Pennsylvania and DPW ("Commonwealth Defendants") filed a separate motion to dismiss on August 11, 2008. Before filing responses to these motions, plaintiff filed a motion to stay the case pending a determination by the Philadelphia Orphan's Court on a petition for the appointment of Abraham Gafni, a retired Philadelphia Court of Common Pleas Judge, as *trustee ad litem* for the Estate. This Court granted plaintiff's motion on August 25, 2008, staying the instant case.[3]

The Philadelphia Orphan's Court, the Honorable Joseph D. O'Keefe presiding, ruled on December 18, 2008. Instead of appointing a *trustee ad litem*, the Orphan's Court removed Andrea Kelly and Daniel Kelly from their offices as Administrators of the Estate and ordered the issuance of Letters of Administration D.B.N. to Abraham Gafni. The Orphan's Court further instructed Gafni to take the necessary steps to substitute himself as the successor plaintiff in this action. On February 12, 2009, the Register of Wills of Philadelphia County issued Letters of Administration D.B.N. to Abraham Gafni, and on February 20, 2009, Abraham Gafni, by and through his attorney, Roy DeCaro, Esq., ("DeCaro") moved for his substitution as a party plaintiff in this action.

On February 17, this Court removed the case from civil suspense, but before taking any action with regard to the motion for substitution learned that Brian Mildenberg, counsel for the Estate when it was administered by Danieal's parents, filed a petition with the Orphan's Court, also on February 17, 2009, seeking the disqualification and removal of Abraham Gafni based on an alleged conflict of interest. In light of the ongoing dispute concerning the administration of the Estate, this Court

---

[3] The motions to dismiss filed by the City and Commonwealth Defendants were later denied as moot by Order dated August 3, 2009.

reinstated the stay in this case on February 26, 2009. The Orphan's Court denied Brian Mildenberg's petition on April 29, 2009.

The Orphan's Court ruling was first brought to this Court's attention during a telephone conference with counsel for all represented parties and with all available unrepresented parties on June 22, 2009.[4] Brian Mildenberg and Zajac, former counsel for the Estate, ("former counsel") participated in the conference by virtue of their recorded appearance on behalf of the Estate and as counsel for plaintiffs in related litigation. DeCaro, current counsel for the Estate, ("current counsel") participated in the conference on behalf of Abraham Gafni. Collectively, counsel apprised the Court of a difference of opinion between current and former counsel concerning the viability of plaintiff's federal causes of action. It is this dispute which precipitated the instant objections and motion to intervene.

During the conference, current counsel expressed his opinion that plaintiff's civil rights claims against the City and Commonwealth defendants were "definitively foreclosed by the United States Supreme Court in DeShaney v. Winnebago County, 489 U.S. 189 (1989), and Castle Rock v. Gonzales, 545 U.S. 748 (2005), and by the Third Circuit in Bennett v. City of Philadelphia, 499 F.3d 281 (3d Cir. 2007)." (Pl. Resp. 2.) Accordingly, current counsel stated that he could not, in good faith, litigate those claims and intended to remove them by amending the Complaint. Former counsel defended the civil rights claims as *bona fide* claims supported by existing case law. Further, former counsel took the position that potential beneficiaries of the Estate have a right to intervene in the action and assert the federal claims if plaintiff remains unwilling to do so.

_____

[4] The Court scheduled the telephone conference to discuss case management issues in this case and in two related cases, Washington v. City of Philadelphia et al., Civil Action No. 08-4634 (E.D. Pa. removed Sept. 24, 2008) and A, a minor, et al. v. Nutter et al., Civil Action No. 08-4100 (E.D. Pa. filed Aug. 25, 2008). At the time of the telephone conference, defendants Dana Poindexter, MEBH, Mickal Kamuvaka, and Julius Murray were unrepresented. Although all unrepresented parties were ordered to participate in the telephone conference, only Mickal Kamuvaka joined the proceedings. All counseled parties participated through counsel.

Following the conference, by Order dated June 22, 2009, the Court vacated the stay in this case for the limited purpose of allowing plaintiff, through current counsel, to file an amended complaint. The Court also granted defendants "and any other parties with standing" leave to file motions and/or objections relating to the amended complaint. The Amended Complaint, filed on July 1, 2009, asserts claims under the Pennsylvania Survival and Wrongful Death Acts against MEBH, Mickal Kamuvaka, Julius Murray, Dana Poindexter, and Laura Sommerer as well as new defendants Andrea Kelly and Daniel Kelly. The Amended Complaint does not include the original Complaint's civil rights claims against the City and Commonwealth Defendants or any other claims against those defendants.

On July 23, 2009, Zajac, on behalf of Troy Washington, Danieal's brother, filed a Motion to Intervene and to Object to the Withdrawal of Causes of Action for Civil Rights Violations and for Violations of Constitutional Protections Enjoyed by and/or Owed to his Sister, Danieal Kelly. On August 3, 2009, Mildenberg, on behalf of Daniel Kelly, filed Objections to Plaintiff's Proposed Amended Complaint. For purposes of this Memorandum, the Court will refer to Troy Washington and Daniel Kelly collectively as the "Objectors" and to their filings as the "Objections."

The Court conducted another case management conference on August 6, 2009 following the filing of the Objections. The conference was attended by the same represented parties and *pro se* defendants who participated in the June 22, 2009 conference. During the August 6, 2009 conference, the City and Commonwealth Defendants requested and were granted leave to file responses to the Objections filed by Troy Washington and Daniel Kelly. Those responses were filed on August 11-13, 2009. Troy Washington filed a reply brief on August 19, 2009.

The issues before the Court are: (1) whether Troy Washington and/or Daniel Kelly have standing to intervene or otherwise assert civil rights claims on behalf of the Estate and (2) whether the federal causes of action asserted in the original Complaint state a claim for relief. Although the

-6-

procedural posture of the case is atypical, all parties were provided an opportunity to submit legal memoranda to the Court, and the issues have been fully briefed.

## III.   DISCUSSION

The Objectors assert legal interests in this litigation based on their status as potential beneficiaries of the Estate, which will recover any damages awarded in the survival action, or as potential beneficiaries of the wrongful death action. It should be noted that plaintiff does not oppose Objectors' intervention and suggested that the Court allow Objectors to address the viability of the civil rights claims by responding to the City and Commonwealth Defendants' Motions to Dismiss the original Complaint. (Pl. Resp. to Washington Motion 2-3.) Nevertheless, for the reasons stated in Part III.A below, the Court concludes that intervention is not appropriate in this case. The merits of the original Complaint's civil rights claims will be discussed in Part III.B. For the reasons stated in that part of this Memorandum, the Court overrules the objections.

### A.   Intervention by Potential Beneficiaries of the Estate and/or Wrongful Death Action

Troy Washington moves for intervention of right under Federal Rule of Civil Procedure 24(a)(2) and, in the alternative, seeks permissive intervention under Rule 24(b). (Washington Motion ¶¶ 11-12, 20.) Daniel Kelly states that he believes "no formal intervention motion is required . . . to raise [his] objections [to the Amended Complaint], as he was already a party to this action, is currently a proposed Defendant, and has standing under Pennsylvania law to object to Plaintiff's course of conduct." (Kelly Objections ¶ 9.) Daniel Kelly's assertions are meritless.

Neither his status as a former administrator of the plaintiff Estate nor his status as a current defendant give Daniel Kelly any right to assert claims on behalf of the plaintiff. Further, Daniel Kelly cites no provision of Pennsylvania law which gives beneficiaries of wrongful death actions or survival

actions an ongoing right to object to plaintiff's course of conduct in such actions.[5] In the alternative, Daniel Kelly "submits that, undoubtedly, since . . . this litigation will affect his legal interests . . . he will meet all grounds needed to intervene." (Kelly Objections ¶ 9.) Accordingly, for purposes of the Objections, the Court will determine whether either Troy Washington or Daniel Kelly should be allowed to intervene in this action to assert Danieal's civil rights claims.

The Court begins by noting that neither Objector would be permitted to intervene in this action if it were in state court. Survival actions are prosecuted on behalf of a decedent's estate by the personal representative of the estate, and the Pennsylvania Supreme Court has ruled that the interests of potential beneficiaries of an estate "must be determined in a forum other than the [trial court], i.e., the Orphan's Court." Frazier v. Oil Chemical Co., 179 A.2d 202, 204 (Pa. 1962) (affirming a trial court order denying potential beneficiaries' motion for intervention in a survival action).

Wrongful death actions, which "exist . . . for the benefit of the spouse, children, or parents of the deceased" may be brought either by the personal representative of the estate or by one of the beneficiaries of the wrongful death action as trustee ad litem for all beneficiaries of the action. 42 Pa. C.S.A. § 8301; Pa. R. Civ. P. 2202(a), (b). Nevertheless, Pennsylvania courts have held that "only one person is entitled to bring [a wrongful death] suit" and that Rule 2203, discussed *supra* at note 5, is the sole mechanism for challenging the conduct of that plaintiff. Estate of Matthews v. Township of Millcreek, 45 Pa. D. & C. 4th 376, 380 (Erie County Ct. Com. Pl. 2000); accord Sedia v. Diggs, 42 Pa. D. & C. 3d 307, 310 (Bucks County Ct. Com. Pl. 1986); see also Pa. R. Civ. P. 2202 (providing that

---

[5] In support of his assertion that he has a right under state law to supervise plaintiff's course of conduct, Daniel Kelly cites Pennsylvania Rule of Civil Procedure 2203. That rule provides wrongful death beneficiaries a limited right to petition the Court for the removal of the current plaintiff if "the action is not properly conducted on the[] behalf of the wrongful death beneficiaries." Pa. R. Civ. P. 2203. Daniel Kelly has not petitioned this Court under Rule 2203 for the removal of the current plaintiff to the wrongful death action, and Rule 2203 does not confer the broad supervisory authority that Daniel Kelly contemplates. Further, the rule does not apply to survival actions.

the plaintiff in a wrongful death action prosecutes the action "for the benefit of those persons entitled by law to recover damages for such wrongful death" and that "[w]hile an action is pending, it shall operate as a bar against the bringing of any other action for such wrongful death").

Nevertheless, the Third Circuit has ruled that intervention is a procedural, not substantive, rule under Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d 216, 229 (3d Cir. 2005). Accordingly, for federal courts ruling on state law causes of action, Federal Rule of Civil Procedure 24 provides the relevant standard for intervention regardless of any state procedural rule which would require, allow, or prohibit intervention. Id.; see also Northwestern Nat. Life Ins. Co. v. Zimbro, 907 F.2d 1139, 1990 WL 86206, at *2-3 (4th Cir. 1990) (per curiam); Low v. Altus Finance S.A., 44 F. App'x 282, 285 (9th Cir. 2002).

Rule 24 provides for two types of intervention: (1) intervention of right and (2) permissive intervention. The Third Circuit has recognized that "intervention controversies arise in many different contexts, and require the court to consider the pragmatic consequences of a decision to permit or deny intervention." Harris v. Pernsley, 820 F.2d 592, 596 (3d Cir. 1987). For this reason, the Third Circuit has avoided "setting strict legal standards by which courts may measure applications under Rule 24(a)(2)" and has applied an abuse of discretion standard of review for intervention of right under Rule 24(a)(2). Id. at 597. Under Rule 24(b), permissive intervention is left to the discretion of the trial court. Fed. R. Civ. P. 24(b).

### 1.    Intervention of Right Under Rule 24(a)(2)

A litigant is entitled to intervene as a matter of right under Rule 24(a)(2) if four criteria are met: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party to the litigation." Harris, 820 F.2d at

596. Objectors fail to satisfy the second and fourth requirements of Rule 24(a)(2). The Court will discuss these requirements and will not, at this time, discuss Objectors' arguments with regard to the first and third requirements of Rule 24(a)(2).

a.   **Objectors Do Not Have a Sufficient Interest in the Litigation**

Where an action is based on state law, an applicant's interest in the litigation is defined by state law. Harris, 820 F.2d at 597; Olden v. Hagerstown Cash Register, Inc., 619 F.2d 271, 273 (3d Cir. 1980). The sufficiency of that interest for purposes of intervention in a federal action, however, is governed by federal law. Harris, 820 F.2d at 597 n. 7 (citing New Orleans Public Service, Inc. v. United Gas Pipeline, Co., 732 F.2d 452, 466 n.29 (5th Cir. 1984)). To be sufficient under the federal standard, "the legal interest asserted must be a cognizable legal interest, and not simply an interest 'of a general and indefinite character.'" Brody v. Spang, 957 F.2d 1108, 1116 (3d Cir. 1992) (quoting Harris, 820 F.2d at 601, other citations omitted). Further, the "interest must be 'direct,' as opposed to contingent or remote." Harris, 820 F.2d at 596. Within these general guidelines, courts must resolve "intervention disputes in a pragmatic manner [by] consider[ing] all of the competing and relevant interests raised by an application for intervention." Id. at 596-97.

The Court will first analyze Objectors' interests under state law with regard to the survival action and the wrongful death action. The Court will then determine whether those interests are sufficient for purposes of Rule 24(a)(2).

The plaintiff in a survival action is the personal representative of a decedent's estate, and any damages awarded in such an action become part of the estate. Under the Pennsylvania law of intestate succession, both Daniel Kelly and Troy Washington are potential beneficiaries of Danieal's Estate. 20 Pa. C.S.A. § 2103. Because parents are listed before siblings in the order of intestate succession, Danieal's parents, including Daniel Kelly, would take before Danieal's siblings, including Troy

Washington. Id. According to the Objectors, Daniel Kelly is currently the sole beneficiary of the Estate because Danieal Kelly's mother has been convicted for manslaughter relating to Danieal's death and is therefore disqualified under Pennsylvania's Slayers Statute. Id.; 20 Pa. C.S.A. § 8801-8802.

Daniel Kelly currently faces criminal charges for child endangerment relating to Danieal's death which, according to the Objectors may disqualify him under Pennsylvania's Slayers Statute. Commonwealth v. Daniel Kelly, No. CP-51-CR-11631-2008 (Phila. County Ct. Com. Pl. Information filed Sept. 19, 2008). The parties have also raised the possibility that Daniel Kelly will be disqualified under an abandonment theory. In the event that Daniel Kelly is disqualified as a beneficiary,[6] Danieal's siblings, including Troy Washington, will inherit the Estate. 20 Pa. C.S.A. § 2103. Depending on Daniel Kelly's eligibility as a beneficiary, each Objector has the potential of inheriting some portion of the Estate and therefore some portion of any damages awarded in the survival action. Based on the Objectors' representations, the Court concludes that they have contingent cognizable interests in the survival action under state law.

The wrongful death statute states that such actions "exist only for the benefit of the spouse, children or parents of the deceased." 42 Pa. C.S.A. § 8301(b). Accordingly, Daniel Kelly, but not Troy Washington, is a potential beneficiary of the wrongful death action. Currently, he is the sole wrongful death beneficiary. If he is disqualified as a wrongful death beneficiary, no person will be eligible to recover damages under 42 Pa. C.S.A. § 8301(b). Under those circumstances, the personal representative of the Estate would be able to recover damages in the wrongful death action "for reasonable hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of injuries causing death." 42 Pa. C.S.A. § 8301(d). Because Daniel Kelly is a potential

---

[6] The Court does not, at this time, reach any conclusions with regard to Daniel Kelly's eligibility as a beneficiary of the Estate or the wrongful death action. It is enough, for present purposes, that the parties agree that Daniel Kelly's disqualification is a possibility.

wrongful death beneficiary, the Court concludes that he has contingent cognizable interest in the wrongful death action under state law.

Neither Objector cites any federal authority to support the proposition that his interest in the litigation is sufficient for purposes of Rule 24(a)(2), and to the extent that the Objectors assume that the sufficiency of their interests is obvious, the Court disagrees. Although both Objectors stand to benefit from any damages awarded in this action, they have no independent rights or claims to assert. Their interests are entirely derivative of Danieal's rights, which are asserted by the plaintiff, who, as the personal representative of the Estate, is the sole person authorized by state law to prosecute the survival action and wrongful death action. Further, the Objectors' interests in the litigation are contingent on both the outcome of Daniel Kelly's criminal prosecution and a determination by the Orphan's Court with regard to the distribution of the Estate. Such derivative, contingent interests are not sufficient for intervention as a matter of right under Rule 24(a)(2).

### b.     Objectors' Interest in the Litigation is Adequately Represented by an Existing Party to the Litigation

Even if the Court were to conclude that the Objectors have a sufficient interest in the litigation, they have failed to establish that their interest in the litigation is not adequately represented by an existing party. For this requirement, "[t]he burden, however minimal, . . . is on the applicant for intervention to show that his interests are not adequately represented by the existing parties." Hoots v. Pennsylvania, 672 F.2d 1133, 1135 (3d Cir. 1982). "Representation will be considered inadequate on any of the following three grounds: (1) that although the applicant's interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests; (2) that there is collusion between the representative party and the opposing party; or (3) that

the representative party is not diligently prosecuting the suit." <u>Brody v. Spang</u>, 957 F.2d 1108, 1122-23

(3d Cir. 1992) (citing <u>Hoots</u>, 672 F.2d at 1135).

Objectors have not alleged any of the three <u>Brody</u> grounds for inadequate representation, and

the record before the Court does not support a finding of inadequacy on any of these grounds.

Objectors interests in the litigation are identical to the interests of the current plaintiff, who serves as

the designated representative for those interests. Further, there is no evidence of collusion between the

current plaintiff and the opposing parties, and there is no evidence that the current plaintiff is not

diligently prosecuting the suit.

Objectors focus on the fact that "current counsel for the estate has unambiguously signaled his

lack of interest in pursuing the government-liability causes of action." (Washington Motion 4; Kelly

Objections ¶¶ 8-10.) Objectors argue that the original Complaint's civil rights claims against the City

and Commonwealth Defendants are *bona fide* claims supported by valid legal authority. (Washington

Motion ¶ 17; Kelly Objections ¶¶ 13-16.) The current plaintiff takes the position that these claims are

"definitively foreclosed" by Supreme Court and Third Circuit precedent. (Pl. Resp. to Washington

Motion 2.) For this reason, the current plaintiff concludes that he "cannot, in good faith, consent to the

continued pursuit" of the claims. (<u>Id.</u>) In other words, the current plaintiff and the Objectors dispute the

legal merits of plaintiff's civil rights claims.

In arguing that the current plaintiff's approach to this litigation fails to protect their interests for

purposes of Rule 24(a)(2), Objectors fail to appreciate the difference between an intervenor's interest

in the litigation and an intervenor's interest in the litigation strategy. The first is a proper basis for

intervention; the second is not. <u>Pennsylvania v. Rizzo</u>, 530 F.2d 501, 505 (3d Cir. 1976) ("That

[intervenors] would have been less prone to agree to the facts and would have taken a different view of

the applicable law does not mean that the [current parties] did not adequately represent their interests in the litigation." (internal quotations omitted)).

Because current plaintiff serves in a representative capacity, his interests are completely aligned with Objectors' interests, which are protected by virtue of the fact that the current plaintiff owes a fiduciary duty to beneficiaries of the Estate and the wrongful death action. Accordingly, the Court concludes that Objectors have failed to establish that their interests are not adequately represented by an existing party to the litigation.

### 2.      Permissive Intervention Under Rule 24(b)

Pursuant to Rule 24(b), a court "may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Intervention under Rule 24(b) is a "highly discretionary decision" left to the judgment of the district court. Brody, 957 F.2d at 115; accord Harris, 820 F.2d at 597. "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

In this case, the claims that the Objectors wish to assert obviously share common questions of fact with the main action because they all arise from the facts surrounding Danieal's death. Indeed, the commonality actually undermines Objectors' application for permissive intervention, because this is not a situation where Objectors wish to intervene to assert their own rights; they wish to assert rights belonging to Danieal, who is, under state law, represented by the current plaintiff. Current counsel has exercised his judgment in determining that plaintiff's civil rights claims are not viable under existing legal authority, and while former counsel obviously disagree with that determination, they have not convinced the Court that Objectors should be allowed to intervene on that ground.

-14-

It is widely acknowledged that the plaintiff is the master of the complaint. <u>Pa. Nurses Ass'n v. Pa. State Educ. Ass'n</u>, 90 F.3d 797, 807 (3d Cir. 1996) (citing <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 398-99 (1987)). With regard to survival actions and wrongful death actions, Pennsylvania law clearly provides for the consolidation of all claims under a single representative. <u>See</u> Part III.A *supra* (discussing intervention under state law). These rules recognize a plaintiff's right to make strategic legal decisions and protect plaintiff from interference. Further, Rule 24(b) requires district courts to consider and protect the rights of existing parties from undue delay and prejudice caused by intervention.

Because Objectors wish to assert civil rights claims on behalf of the Estate, allowing Objectors to intervene would require the current plaintiff to collaborate with the Objectors on a number of matters, most notably the drafting of a new complaint. Such collaboration would impinge on plaintiff's right to control the course of the litigation and would likely result in unnecessary delay. The Court is also mindful of the fact that nothing bars the Objectors from communicating directly with plaintiff, their representative, to ensure that he protects their interests. And, to the extent that they believe he is not adequately discharging his duties as the personal representative for the Estate, Objectors may seek relief in the appropriate forum.

Because Objectors interests are adequately represented by the current plaintiff and because the Court finds that intervention will prejudice plaintiff's ability to effectively prosecute this action, the Court will not exercise its discretion to grant intervention under Rule 24(b).

B.      **Civil Rights Claims for Violations of Danieal's Substantive Due Process Rights Under the Fourteenth Amendment**[7]

---

[7] The original Complaint also asserts that the City and Commonwealth Defendants violated Danieal Kelly's rights under the First and Fifth Amendments to the United States Constitution. (Compl. ¶¶ 48, 51.) These claims are unsupported by the facts pled in the Complaint and are not, in any case, at issue for purposes of the instant Objections. The Court also does not address, for purposes of the instant Objections, the City and Commonwealth

Insofar as the instant dispute centers on the civil rights claims asserted in the original Complaint, the Court writes briefly to address Objectors' contention that these claims are *bona fide* claims which should be prosecuted by current plaintiff.[8] Counts III and IV of the original Complaint—those the Objectors seek to preserve—allege that the City and Commonwealth Defendants violated Danieal Kelly's substantive due process rights under the Fourteenth Amendment to the United States Constitution by failing to ensure that she received necessary medical care, monitoring and treatment.

Danieal's substantive due process claims are based on two exceptions to the general rule that the Due Process Clause does not impose an affirmative obligation on the state to protect its citizens. DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189 (1989). The first applies where there exists a special relationship between the individual and the state, such that the state has a duty to protect the health and safety of the individual. DeShaney, 489 U.S. at 197-201. The second exception arises where a "state-created danger" causes harm to an individual. See Bright v. Westmoreland County, 443 F.3d 276, 281-82 (3d Cir. 2006) (quoting Schieber v. City of Philadelphia, 320 F.3d 409, 416 (3d Cir. 2003)). Although Objectors have, at times, argued that both exceptions apply in this case, they have focused on the state-created danger exception, in particular the "affirmative act" requirement of that exception.[9]

_____

Defendants' various immunity defenses which were raised in their motions to dismiss the original Complaint and, to a limited extent, in their responses to the Objections.

[8] In analyzing the civil rights claims promoted by the Objectors, the Court accepts the allegations in the original Complaint, the Amended Complaint, and the Objections as true and will construe those facts in the light most favorable to the Objectors. The Court notes that neither plaintiff nor defendants object to this approach, which is necessitated by the procedural posture of the case. (Pl. Resp. to Washington Mot. 2-3; Commonwealth Resp. to Objections 3-4.)

[9] In any case, the "special relationship" exception is clearly inapplicable in this case based on the facts alleged. That exception stems from the "proposition that when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and well-being." DeShaney, 489 U.S. at 199-200. The Third Circuit "has read *DeShaney* primarily as setting out a test for physical

DeShaney involved a child, Joshua, who suffered permanent brain damage from a severe beating at the hands of his father.  "The complaint alleged that respondents had deprived Joshua of his liberty without due process of law, in violation of his rights under the Fourteenth Amendment, by failing to intervene to protect him against a risk of violence at his father's hands of which they knew or should have known."  DeShaney, 489 U.S. at 193.  In rejecting petitioners' due process argument, the Court stated that "while the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them."  Id. at 201.

As the Third Circuit has explained,

DeShaney stands for the proposition that the Due Process Clause imposes no affirmative duty to protect a citizen who is not in state custody . . . . [H]owever, this does not mean that no constitutional violation can occur when state authority is affirmatively employed in a manner that injures a citizen or renders him "more vulnerable to injury from another source than he or she would have been in the absence of state intervention."  This complement to the DeShaney holding has come to be known in its progeny as the "state-created danger doctrine."

Bright v. Westmoreland County, 443 F.3d 276, (3d Cir. 2006) (quoting Schieber v. City of Philadelphia, 320 F.3d 409, 416 (3d Cir. 2003)); see also Bennett v. City of Phila., 499 F.3d 281, 286-90 (3d Cir. 2007).

Under Third Circuit precedent, the essential elements of a meritorious state-created danger claim are as follows:

(1)     the harm ultimately caused was foreseeable and fairly direct;
(2)     a state actor acted with a degree of culpability that shocks the conscience;

---

custody." D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1370 (3d Cir. 1992). Objectors argue that custody is established in this case because the City exercised "legal custody" over Danieal to the extent that it was authorized to make certain decisions on her behalf as part of its supervision of the Kelly family. This concept of custody falls far short of the "special relationship" required by DeShaney. Further, plaintiffs concede both that defendants never removed Danieal from her parents' custody and that she was in her mother's custody at the time of her death.

(3)     some relationship existed between the state and the plaintiff that renders plaintiff a
        foreseeable victim; and

(4)     "a state actor affirmatively used his or her authority in a way that created a danger to the
        citizen or that rendered the citizen more vulnerable to danger than had the state not
        acted at all."

Bennett, 499 F.3d at 287 (quoting Bright, 443 F.3d at 281).  The Third Circuit has repeatedly

emphasized that liability under the state-created danger doctrine "requires affirmative state action;

mere 'failure to protect an individual against private violence' does not violate the Due Process

Clause." Bright, 443 F.3d at 284 (quoting DeShaney, 489 U.S. at 197); see also Ye v. United States,

484 F.3d 634, 638 (3d Cir. 2007).

In essence, Objectors argue that the affirmative action requirement is satisfied in this case by

the fact that DHS contracted with MEBH to provide necessary services for Danieal. The Objectors

portray MEBH as a "malfeasor" and a "snake" who endangered Danieal while it was serving as the

state's agent. (Kelly Objections ¶ 24; Washington Reply 4.) Specifically, the Objectors enumerate a

number of failures by MEBH in discharging its duties under its contract with DHS, including, *inter*

*alia*, fraudulent record-keeping, fraudulent reporting to DHS, failing to visit families and schools, and

disorganized management. (See Kelly Objections ¶¶ 26-27.) According to Objectors, these failures

resulted in Danieal's death. However, all of MEBH's enumerated failures with regard to the Kelly

family (and other families) concern *nonperformance* of its contract obligations. Objectors fail to

identify any action by MEBH which affirmatively endangered Danieal. What Objectors are arguing is

that MEBH, like DHS, *failed to do* anything to protect Danieal from neglect by her mother. This cannot

be a basis for government liability under the Due Process Clause any more than DHS's failure to

directly intervene would serve as a basis for such liability. See Bennett, 499 F.3d at 287-88.

According to the facts alleged, DHS's decision to involve MEBH in their supervision of the

Kelly family did little to protect Danieal from neglect and abuse in her mother's home. Nevertheless,

-18-

the Objectors have alleged no fact which shows that the appointment of MEBH "*created*" the danger which caused Danieal's death or "rendered [her] more vulnerable" to that danger. <u>Bennett</u>, 499 F.3d at 287. Objectors' other attempts to distinguish <u>Bennett</u> and analogize to successful state-created danger claims are likewise meritless. Under these circumstances, Objectors have failed to establish (1) that the civil rights claims alleged in the original Complaint state a claim for relief under the state-created danger exception to the <u>DeShaney</u> rule[10] and (2) that the current plaintiff's decision to remove those civil rights claims from the Amended Complaint is evidence of bad faith or otherwise justifies Objectors' intervention to pursue those claims. Accordingly, the objections raised by Troy Washington and Daniel Kelly are overruled.

## IV.    CONCLUSION

For all of the foregoing reasons, Troy Washington's Motion to Intervene and to Object to the Withdrawal of Causes of Action for Civil Rights Violations and for Violations of Constitutional Protections Enjoyed by and/or Owed to his Sister, Danieal Kelly and the Objections of Interested Party Daniel Kelly, the Natural Father of Danieal N. Kelly, ("Objector") to Plaintiff's Proposed Amended Complaint are denied to the extent that Troy Washington and Daniel Kelly move for intervention and overruled to the extent that they object to the Amended Complaint filed by the current plaintiff.

---

[10] Under the circumstances, the Court does not deem it appropriate to give Objectors another opportunity to allege facts in support of the civil rights claims. The Objectors drafted the original Complaint and were made aware of the relevant issues prior to submitting their Objections. For purposes of its merits analysis, the Court accepted any additional facts alleged in the Objections as true. If Objectors have relevant factual information that has not been presented to the Court, they should communicate that information to current plaintiff who, if warranted, may seek leave to amend the complaint again under Federal Rule of Civil Procedure 15(a)(2).